Fannie M. CATO, Plaintiff–Appellant,

v.

Jim THOMPSON, et al., Defendants–Appellees.

No. 03–4006.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 2004.

Decided Nov. 30, 2004.

Kevin S. Besetzny, Novoselsky & Associates, Chicago, IL, for Plaintiff–Appellant.

Daniel S. Alcorn, Stoerzbach Morrison Robertson Wilcox Alcorn, Galesburg, IL, for Defendants–Appellees.

Before RIPPLE, EVANS, and SYKES, Circuit Judges.

## ORDER

Fannie Mae Cato, acting as Special Administrator for the estate of her son, Wardell Cato, Jr., brought an action under 42 U.S.C. § 1983 and Illinois law claiming that the defendants' failure to provide adequate medical care resulted in his death while he was in custody at the Knox County Jail. However, her attorney failed to respond to the defendants' motion for summary judgment, and a judgment was entered in their favor. The magistrate judge, sitting by consent, then denied Ms. Cato's postjudgment motion to set aside the judgment. Since Ms. Cato—who is still represented by the same attorney—offers no valid excuse for the failure to respond, we affirm.

Cato was taken into custody on October 22, 2000, to begin serving a 45–day sentence for possession of a controlled substance. This was his twelfth incarceration in the jail in just over twelve years. His booking sheet documents that he was known to suffer from asthma, an enlarged heart, and high blood pressure. According to the State of Illinois Standards for Jails, county jails must provide a medical examination for prisoners "within 14 days of incarceration." The defendants claim that Cato would have seen a physician on his fifteenth day in custody; however, early in

the morning of the fourteenth day he experienced difficulty breathing. He was sent to a local hospital where he died within a few hours.

Ms. Cato filed suit in the district court on November 5, 2001. Both parties agreed to a joint scheduling order for discovery and consented to have the case heard by a magistrate judge. But Ms. Cato's attorney, Kevin Besetzny, apparently did almost nothing further. The following allegations of the defendants are uncontested. Besetzny failed to comply with the May 1, 2002 deadline for making initial disclosures. *See* Fed.R.Civ.P. 26(a). The defendants made unilateral disclosures on May 9, 2002, but received nothing from Besetzny until June 27, 2002, a week after they filed a Motion to Compel Discovery. The defendants had similar trouble obtaining authorization for release of Cato's medical records and mental health information. Again Besetzny did not respond until a few days after the defendants filed another motion to compel. Besetzny then allowed the deadline for disclosure of expert witnesses to pass without identifying any proposed witnesses. By July 1, 2003, the date set for the conclusion of discovery, Besetzny still had not deposed any witnesses, requested any documents, or presented any interrogatories. There is nothing in the record to suggest that Besetzny at any time attempted to communicate with the court about the reasons for his inaction, or that he ever requested any extensions of time.

At summary judgment, the defendants presented evidence that guards responded within minutes to a "commotion" caused by prisoners attempting to draw attention to Cato's distress, and that, in the opinion of the emergency room physician who treated Cato, nothing that could have been done for him that morning would have averted his death. This evidence was uncontested

because Besetzny failed to respond to the defendants' motion for summary judgment. The magistrate judge entered judgment in favor of the defendants on the alternative grounds that failure to respond may be deemed an admission of the motion under Local Rule 7.1(D)(2), and that there was no genuine issue of material fact.

The unfavorable ruling at long last drew Besetzny's attention back to this case, and he filed a motion to set aside the judgment relying on Federal Rules of Civil Procedure 59(e) and 60(b). He argued that the magistrate judge should exercise discretion under Rule 59(e) to reconsider the judgment "in light of [Ms. Cato's] need for additional discovery" and, alternatively, that the judgment should be reopened on the basis of Rule 60(b)'s provision for forgiving "excusable neglect." In support of the latter argument, Besetzny offered three factors as extenuating: 1) his failure to "diary" the deadline for responding to the summary judgment motion; 2) an "overwhelming" trial schedule; and 3) his unfamiliarity with the local rule that establishes the normal briefing schedule for summary judgment motions and provides that failing to respond will be deemed an admission of the motion. He explained that a subordinate attorney assigned to the case had resigned and that the attorney's replacement had "failed to inform" Besetzny of these provisions. The magistrate judge denied the motion, discerning no basis for relief under either rule.

■ Ms. Cato's first argument on appeal seems to be that Rule 59(e) requires a judge to reopen proceedings, if the judgment was based on an attorney's failure to file a response to a summary judgment motion, as long as the plaintiff submits a "legitimate, truthful, and uncontested basis" for the failure. This argument is mistaken for several reasons. First, we have held repeatedly that litigants are accounta-

ble for the mistakes or omissions of their attorneys; if the law were otherwise, there would be incentive for attorneys to neglect their cases. *See Easley v. Kirmsee,* 382 F.3d 693, 699–700 (7th Cir.2004); *Tango Music, LLC v. DeadQuick Music, Inc.,* 348 F.3d 244, 247 (7th Cir.2003); *United States v. 8136 S. Dobson St.,* 125 F.3d 1076, 1084 (7th Cir.1997). Second, we have held that there are only three valid grounds for a Rule 59(e) motion—newly-discovered evidence, an intervening change in the law, and manifest error in law, *see Cosgrove v. Bartolotta,* 150 F.3d 729, 732 (7th Cir. 1998)—and Ms. Cato's argument invokes none of these. She does suggest that Besetzny's lack of diligence should qualify as "manifest error," but the notion is entirely frivolous. This contention is arguably waived, as the defendants point out, because it was not raised in the same terms in the district court and because Ms. Cato has not provided any legal authority to support the proposition, *see United States v. Hook,* 195 F.3d 299, 310 (7th Cir.1999). But even if it were not, we have defined "manifest error" as " 'wholesale disregard, misapplication, or failure to recognize controlling precedent' " on the part of the court. *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir.2000) (quoting *Sedrak v. Callahan,* 987 F.Supp. 1063, 1069 (N.D.Ill.1997)). Lack of diligence on the part of counsel plainly does not fall within this definition. If that were not enough, we have stated specifically that Rule 59 " 'does not provide a vehicle for a party to undo its own procedural failures.' " *Bordelon v. Chi. Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir.2000) (quoting *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996)).

▮ Ms. Cato fares no better under Rule 60(b). She argues that she is entitled to have the summary judgment order vacated under Rule 60(b)(1) because Besetz-

ny's various failures were "wholly matters of excusable neglect," and, alternatively, that the magistrate judge erred in not exercising discretion under Rule 60(b)(6) "to avoid imposing a draconian result upon Plaintiff." The defendants respond that these Rule 60(b) arguments should be taken off the table immediately, given our bright-line rule that substantive motions filed within ten days of the entry of judgment should be deemed to arise under Rule 59, *see Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1121 (7th Cir.2001). But the sole purpose of that rule was "reducing [the] disputes over appealability" that arose from the different impact the two rules had on the running of the time to appeal the underlying judgment, *see Ball v. City of Chicago,* 2 F.3d 752, 760 (7th Cir.1993). And the reason for it no longer exists since Fed. R.App. P. 4(a)(4)(A)(vi) now provides that motions under Rule 60 toll the time for appeal if they are filed no later than ten days from the entry of judgment. Moreover, we have said that the bright-line rule has never had anything to do with "the question what standard a judge should apply in evaluating a post-judgment motion," *Ball,* 2 F.3d at 760, which is all that is at issue here. In *Ball* itself, we suggested that the applicable standard should be determined by the party's own designation. "If a litigant wants the benefit of whatever lower threshold of proof Rule 59(e) may offer, it behooves him to indicate that his motion is under Rule 59(e)." *Id.; see also Harold Washington Party v. Cook County, Illinois Democratic Party,* 984 F.2d 875, 878 (7th Cir.1993) (refusing to find error in the district court's construction of a motion under Rule 60(b) where the plaintiffs denied bringing the motion under Rule 59(e), even though the motion was filed within ten days of the judgment).

Regardless, Ms. Cato's argument is flawed because it is dependent on Besetz-

ny's conduct meeting the standard for "excusable neglect." It is true that we have interpreted the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), as broadening the definition of "excusable neglect" under Rule 60(b)(1), *see Robb v. Norfolk & W. Ry. Cos.*, 122 F.3d 354, 359 (7th Cir.1997), but late or missed filings are not "automatically" excusable, *id.* at 362; *United States v. Marbley*, 81 F.3d 51, 52 (7th Cir.1996). In fact, we held recently that "outright and consistent disregard of a court's scheduling orders" "can *only* be classified as inexcusable inattentiveness or neglect, rather than excusable carelessness." *Easley*, 382 F.3d at 698 (emphasis added).

Furthermore, the controlling precedents have given little weight individually to the factors on which Ms. Cato relies to establish "excusable neglect." "[I]gnorance of the rules ... do[es] not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392; *see also Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir.1996) (explaining that failing to read or comprehend applicable rules is an "unaccountable lapse" and not "excusable neglect"). In addition, " '[e]xcusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule." *United States v. Dumas*, 94 F.3d 286, 289 (7th Cir.1996).

█ As for the argument concerning Rule 60(b)(6), the provision is inapplicable "when attorney negligence is at issue," *Easley*, 382 F.3d at 700 n. 5, and it applies only under "extraordinary circumstances," *see Pioneer*, 507 U.S. at 393; *Lowe v. McGraw–Hill Cos.*, 361 F.3d 335, 342 (7th Cir.2004), which, despite Besetzny's contention at oral argument, are not present here.

Finally, there is the question of the validity of the summary judgment itself.

The notice of appeal states that Ms. Cato is appealing the grant of summary judgment as well as the denial of the post-judgment motion. And because that motion was filed within ten days of the judgment, it tolled the time for appeal, *see* Fed. R.App. P. 4(a)(4)(A)(iv-vi), so this court has jurisdiction to review the underlying judgment. However, in her brief, Ms. Cato does not challenge the grant of summary judgment. The only contention in her appellate brief that could conceivably be interpreted as directed to the question—the assertion that the magistrate judge failed to reach the merits—is without basis. The magistrate judge did not rest the judgment on the local rule's provision that a failure to respond may be interpreted as acquiescence to the motion; he also took particular care to find in the alternative that there was no material issue of fact in dispute, and that the defendants were entitled to prevail based on the undisputed evidence. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994) (holding that facts "supported by admissible evidence" may be "admitted to exist without controversy" if the adverse party fails to submit a statement adequately contesting them). The order is conclusory—it merely relates the magistrate judge's conclusion that "there is no evidence in the record that would support a finding of deliberate indifference or a finding of causation"—but we have examined the record, and in our view no reasonable factfinder could find in favor of Ms. Cato on the evidence presented.

Accordingly, the judgment is AFFIRMED.